UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

HEATHER B.,[1]                    )
                                  )
                 Plaintiff,       )
                                  )
         v.                       )         No. 4:22-cv-00152-KMB-TWP
                                  )
MARTIN J. O'MALLEY,[2]            )
                                  )
                 Defendant.       )

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Heather B. applied for supplemental security income from the Social Security Administration ("SSA") on February 17, 2021, alleging an onset date of August 1, 2020. [Dkt. 14-5 at 6-14, 16.] Administrate Law Judge Michael Scurry (the "ALJ") conducted a hearing on January 13, 2022. [Dkt. 14-2 at 33-62.] The ALJ issued a decision on January 26, 2022, concluding that Heather was not disabled and therefore not entitled to receive supplemental security income. [*Id.* at 16-28.] The Appeals Council denied Heather's request for review on October 4, 2022. [*Id.* at 2-4.] On December 5, 2022, Heather timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

## I.  STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'"  *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).  The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.  RELEVANT BACKGROUND

Heather was 42 years old when she applied for supplemental security income.  [Dkt. 14-2 at 40.]  She completed ninth grade and previously worked as a bartender, certified nursing aide, and housekeeper at a hotel.[3]  [*Id.* at 42-43.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Heather was not disabled.  [*Id.* at 16-28.]  Specifically, the ALJ found as follows:

- At Step One, Heather had not engaged in substantial activity the onset date of February 17, 2021.  [*Id.* at 18.]

- At Step Two, Heather had the following severe impairments:  Bipolar disorder, anxiety, depression, post-traumatic stress disorder, lumbar spine degenerative disc disease, asthma/COPD, and obesity.  [*Id.*]

- At Step Three, Heather did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [*Id.* at 18.]

- After Step Three but before Step Four, Heather had the RFC "to perform light work as defined in 20 C.F.R. § 416.967(b) except she should never climb ladders, ropes, or scaffolds.  She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to extreme heat and cold, wetness, humidity, vibration, fumes, dusts, odors, gases, and areas of poor ventilation, and dangerous workplace hazards such as exposed moving machinery and unprotected heights.  She can understand and remember simple and detailed instructions but not complex instructions, and carry out simple, routine, and detailed tasks, but not complex tasks.  The tasks performed should be without stringent speed or strict rate-based production requirements and involving few, i[f] any, daily changes in a work task or work environment, so a stable day-to-day work setting.  She can occasionally interact with coworkers and supervisors throughout the day.  She should not have any public interaction as part of the job duties."  [*Id.* at 21.]

- At Step Four, Heather had no past relevant work.  [*Id.* at 27.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Heather's age, education, and RFC, there were jobs that existed in significant numbers in

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here.  Specific facts relevant to the undersigned's disposition of this case are discussed below.

4

the national economy that Heather could have performed through the date of the decision, including cafeteria attendant, mailroom clerk, and officer helper.  [*Id.*]

### III. DISCUSSION

Heather claims that the ALJ erred in four ways:  (1) by crediting the opinion of state agency psychologists Dr. Ken Lovko and Dr. William Shipley over the opinion of the SSA's consultative examining psychologist Dr. Scott Duncan; (2) by failing to incorporate Heather's limitations in concentration, persistence, and pace into her RFC and the hypotheticals the ALJ posed to the VE; (3) by engaging in a patently wrong subjective symptom analysis; and (4) by failing to reconcile a conflict between the VE's testimony and a publication from the Department of Labor during the Step Five analysis.

The Court will address each of these issues in turn.  As explained below, the Court finds that Heather has not shown reversible error on the first three issues.  The Court also finds that Heather forfeited the fourth issue by failing to object to the VE's testimony during the disability hearing.  Even if Heather had not forfeited the fourth issue, any error on that issue would be harmless and would not provide a basis for reversal.  Accordingly, the Court affirms the decision of the ALJ.

### A.  Expert Opinion Evidence

Heather argues that the ALJ did not provide an adequate basis for finding Dr. Duncan's opinion less persuasive than Dr. Lovko's and Dr. Shipley's.  She argues that Dr. Duncan's opinion that Heather would have difficulty working in "many" environments "implies that it would be difficult to find *any* work environment that Plaintiff could successfully tolerate."  [Dkt. 18 at 14 (emphasis added).]  She argues that if the ALJ found Dr. Duncan's opinion "too vague" or "incomplete," he was required to follow up and ask Dr. Duncan "to furnish the missing information or prepare a revised report."  [*Id.* (quoting 20 C.F.R. § 416.919p(b)).]  She also contends that the

5

ALJ erred in finding that Dr. Duncan's opinion is inconsistent with the medical record, arguing that displaying a stable mood during psychotherapy appointments is not inconsistent with a severely limiting mental illness and that the ALJ improperly played doctor by attributing Heather's anxiety to "familial issues/stressors." [Dkt. 18 at 12-13.] And she argues that it is "unusual" for an ALJ to find the SSA's consultative examiner's opinion unpersuasive and that such a finding "can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." [*Id.* at 11 (quoting *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)).]

In response, the Commissioner argues that "[i]n assessing the degree of persuasiveness of Dr. Duncan's opinion, the ALJ reasonably considered the most important factors of supportability and consistency." [Dkt. 19 at 10.] He also argues that the ALJ considered the evidence in Heather's medical record in making this determination and that Heather asks this Court to reweigh the evidence, which it may not do. [*Id.*] The Commissioner contends that Dr. Duncan's opinion that Heather would have difficulty working in "many environments" did not provide specific limits that would preclude all work. [*Id.*]

In her reply, Heather reiterates that the ALJ was required to follow up with Dr. Duncan to elicit more information or request a revised report if the ALJ found that Dr. Duncan's report was incomplete. [Dkt. 21 at 10.] She also argues that the ALJ improperly overlooked evidence in finding Dr. Duncan's opinion to be inconsistent with her medical records. [*Id.* at 11.]

In determining the weight to give a medical source opinion or prior administrative finding, the ALJ must consider a number of factors, including: (1) whether the opinion is supported by objective medical evidence and explanations; (2) whether the opinion is consistent with evidence from other medical and nonmedical sources; (3) the treatment relationship between the claimant and the person giving the opinion; (4) the specialization of the person giving the opinion; and

(5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The first two factors—supportability and consistency—are the most important. 20 C.F.R. § 404.1520c(b)(2). But when "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ "will articulate how he considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)." 20 C.F.R. § 404.1520c(b)(3).

The Court finds that the ALJ did not commit reversible error in evaluating the expert opinions of psychologists Dr. Lovko, Dr. Shipley, and Dr. Duncan. Most importantly, the Court is not persuaded that Dr. Duncan's opinion that Heather "would have difficulty working in many environments" implies that she could not work in *any* environment. The word "many," indicates "a large but indefinite number." *Many*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, (11th ed. 2003). Heather provides no authority to support her position that "many environments" implies "all environments," and the Court disagrees with her interpretation since that is not how the word "many" is commonly understood. Heather is not simply asking the Court to find that the ALJ erred in evaluating Dr. Duncan's expert opinion; rather, she is asking the Court to imagine that Dr. Duncan's opinion means something different than what it says. This request is not consistent with the Court's limited role of reviewing the ALJ's opinion for legal error.

The Court is also not persuaded by Heather's argument that 20 C.F.R. § 416.919p(b) required the ALJ to follow-up with Dr. Duncan to request more information or a revised report. Contrary to what Heather argues in her briefing, the ALJ did not find that Dr. Duncan's report was "vague" or "incomplete," and he did not discredit Dr. Duncan's opinion on that basis. Instead, the ALJ merely noted that, even taking Dr. Duncan's opinion as true that Heather would have "difficulty working in many environments," Dr. Duncan "did not say the claimant would have a

problem with all environments." [Dkt. 14-2 at 25.] Heather cites an unpublished opinion from the Seventh Circuit Court of Appeals in support of her argument, but that case is distinguishable because the ALJ expressly found that the consultative examiner's opinion was "vague and not specific in terms of functioning" and discredited the opinion on that basis. *Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019).The Court also finds that the ALJ did not overlook evidence in finding that Dr. Duncan's opinion was inconsistent with the medical evidence. The ALJ's opinion acknowledges Heather's diagnoses of bipolar disorder, anxiety, and post-traumatic stress disorder. [Dkt. 14-2 at 25.] The opinion notes that Heather was sometimes anxious or very distressed during appointments, that her medication had to be adjusted because Pristiq and Abilify were not effective, and that she had insomnia and racing thoughts. [*Id.* at 23-24.] The opinion also notes that Heather was sometimes oriented, alert, interactive, or euthymic during appointments, that she responded positively to the medications Geodon and Vraylar, that her treatment remained occasional psychotherapy appointments with medication from her primary care physician, and that "[w]hile not every mental status exam was normal, noting some anxiety, her exams were largely normal, and she commonly displayed an appropriate mood." [*Id.* at 23-25.] The ALJ noted that Heather "alleged hallucinations/delusion" when she met with Dr. Duncan, "though she had told her primary care provider that her symptoms were controlled," a finding of inconsistency that Heather does not dispute. [*Id.* at 24.]

Heather points out that the only psychotherapy appointment where she was euthymic was conducted virtually and that she was anxious during three of her four psychotherapy appointments, which the ALJ did not acknowledge in his opinion. [Dkt. 18 at 12.] But the ALJ is not required to discuss every piece of evidence in the record, so long as he provides a logical bridge between the evidence and his conclusions. *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023).

Heather's granular points about whether the ALJ considered the percentage and location of psychotherapy visits during which she was anxious or euthymic is a request to reweigh the evidence, which this Court may not do. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).

Moreover, the ALJ did not improperly "play doctor" when he noted that Heather "generally saw a therapist every few months and generally reported familial issues/stressors." [Dkt. 14-2 at 26.] To the contrary, this statement accurately reflects Heather's medical records. The ALJ's statement merely describes Heather's medical records and does not cross the line into medical judgment by offering an opinion about diagnoses, etiologies, treatments, prognoses, or other areas outside the realm of the ALJ's expertise.

Heather argues that it is "unusual" for an ALJ to find a consultative examiner's opinion unpersuasive and that such a finding "can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." [*Id.* at 11.] The ALJ found that the opinions of Dr. Lovko and Dr. Shipley were more consistent with the medical record than the opinion of Dr. Duncan. Under 20 C.F.R. § 404.1520c(b), this consistency finding permitted the ALJ to give greater weight to their opinions than to Dr. Duncan's opinion. Heather has not identified a legal error in this consistency finding and is therefore not entitled to relief on this issue.

In conclusion, the ALJ's evaluation of the expert medical opinions is supported by substantial evidence. The ALJ did not ignore an entire line of contradictory evidence, "play doctor," or otherwise commit legal error in finding Dr. Lovko's and Dr. Shipley's opinions more persuasive than Dr. Duncan's opinion. For these reasons, Heather's request for relief on this issue is denied.

9

### B.  Concentration, Persistence, and Pace Limitations

Heather argues that "[e]ven though the ALJ adopted the consultants' verbatim narratives describing Plaintiff's mental RFC limitations, the ALJ did not confront these more specific assessments," (*i.e.*, the check-box limitations), "including most notably that Plaintiff would have moderate limitations maintaining attention and concentration for extended periods and completing a workday or workweek without interruptions from psychologically based symptoms that result in an unreasonable number and length of rest periods."  [Dkt. 18 at 15.]

In response, the Commissioner argues that the Seventh Circuit Court of Appeals has acknowledged that check-box limitations are "perhaps less useful to an ALJ than a doctor's narrative RFC assessment."  [Dkt. 19 at 11 (quoting *Varga v. Colvin*, 794 F.3d 809, 814-16 (7th Cir. 2015).]  In this case, the Commissioner argues, Dr. Shipley's and Dr. Lovko's narrative description of Heather's concentration, persistence, and pace limitations adequately encompassed the check-box limitations, and the ALJ did not err in determining Heather's RFC and posing hypotheticals to the VE.  [Dkt. 19 at 12.]

Heather's reply brief does not include additional argument on this issue.  [*See* dkt. 21.] The Court construes her failure to include this issue in her reply brief as an acknowledgment of the correctness of the Commissioner's position that Dr. Lovko and Dr. Shipley adequately incorporated Heather's check-box limitations in concentration, persistence, and pace into their narrative descriptions, which the ALJ incorporated verbatim into her RFC and into the hypotheticals he posed to the VE.  *See East v. Astrue*, 2010 WL 1751720, at *1 (S.D. Ind. Apr. 30, 2010) (interpreting the claimant's "failure to file a reply brief as an acknowledgment of the correctness of the Commissioner's" arguments); *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 950 (N.D. Ill. 2010) (finding that "failure to respond to an

opposing party's argument implies concession"); *Law v. Medco Rsch. Inc.*, 113 F.3d 781, 787 (7th Cir. 1997) (explaining that "[f]ailure to contest a point is not necessarily a waiver, but it is a risky tactic, and sometimes fatal"); *Milam v. Dominick's Finer Foods, Inc.*, 567 F.3d 830, 832 (7th Cir. 2009) (interpreting "plaintiffs' silence in their response as acknowledgment").

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).  "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.*  Although it is not necessary that the ALJ use the precise terminology of "concentration," "persistence," or "pace," courts will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record.  *Id.*

Having reviewed the record, the Court finds that the ALJ sufficiently incorporated Heather's concentration, persistence, and pace limitations into her RFC and into the hypotheticals he posed to the VE.  The Seventh Circuit Court of Appeals has explained that "[w]e have . . . let stand an ALJ's hypothetical omitting the terms, 'concentration, persistence, and pace,' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).  "We have most often done so when a claimant's limitations were stress- or panic related and the hypothetical restricted the claimant to low-stress work." *Id.* (citing *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002) (upholding hypothetical formulated in terms of "repetitive, low-stress" work because that description excluded positions likely to trigger symptoms of a panic disorder that lay at the root of the claimant's moderate concentration, persistence, and pace limitations); *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (upholding hypothetical that restricted the claimant to low-stress, low-production work when the

claimant's difficulties with concentration, persistence and pace arose from stress-induced headaches, frustration and anger); *Sims v. Barnhart*, 309 F.3d 424, 427 (7th Cir. 2002) (finding VE's inquiry into low-stress, uncomplicated work accounted for limitations arising partly from panic disorder)).

In this case, Dr. Shipley's and Dr. Lovko's narrative description of Heather's concentration, persistence, and pace limitations adequately excluded those tasks that someone with her limitations would be unable to perform.  The narrative expressly accounted for limitations in her ability to carry out detailed instructions.  [Dkt. 14-3 at 40, 49.]  It also accounted for her limitations in pace by stating that she was limited to work where the "tasks performed should be without stringent speed or strict rate-based production requirements."  [*Id.*]; *see also Hess v. O'Malley*, --- F.4th ---, 2024 WL 470523, *5 (7th Cir. February 7, 2024) (holding that the claimant's RFC sufficiently accounted for his moderate limitations in concentration, persistence, and pace by reciting that he was "limited to a work environment with no fast paced production quota or rate" and that "any production requirements should be more goal oriented, such as based on a daily or weekly monthly quota").  The narrative description accounted for Heather's panic attacks—which she testified were primarily triggered by being around her son's girlfriend and people she doesn't know—by limiting her to jobs where she would only have to "occasionally interact with coworkers and supervisors throughout the day" and jobs where she would "not have any public interaction as part of her job duties."  [Dkt. 14-3 at 40, 49.]  Thus, the ALJ accounted for Heather's panic attacks by limiting her to jobs where her panic attacks were less likely to occur.

In sum, the Court concludes that the ALJ adequately incorporated Heather's limitations into the RFC and the hypotheticals he posed to the VE, including her limitations in concentration, persistence, and pace. For these reasons, Heather's request for relief on this issue is denied.

## C.  Subjective Symptom Analysis

Heather argues that the ALJ made several errors in concluding that her statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record.  She argues that, contrary to the ALJ's finding, her medical records do not show that she was able to walk, go outside, cook, clean, listen to music, and spend time with her dogs; instead, these were coping strategies that her psychotherapist recommended but that Heather testified were unhelpful.  [Dkt. 18 at 18.]  Even if the record does show that Heather was able to engage in these activities, she argues that it was error for the ALJ to equate these activities with the ability to engage in full-time work.  [*Id.*]  Heather also argues that the ALJ did not account for the severity of her anxiety and mood disorders, and that he incorrectly found that she had "no complaints of upper extremity pain or limitation," when in fact her primary care physician noted that she had tendinitis and carpal tunnel syndrome in her hands.[4] [*Id.* at 18-19.]

In response, the Commissioner argues that the ALJ identified inconsistencies between Heather's testimony and the medical records and reasonably concluded that she was exaggerating the frequency and severity of her symptoms.  [Dkt. 19 at 14-18.]  He argues that the ALJ was not required to identify every piece of evidence in the record, that he was permitted to consider Heather's ability to perform daily activities and did not equate those activities with full-time work,

---

[4] Aside from this isolated reference to tendinitis and carpal tunnel syndrome, Heather's arguments relate exclusively to her anxiety and mood disorders.  In his response, the Commissioner argues that any arguments Heather might have made about her other conditions, such as COPD, asthma, lumbar spine degenerative disc disease, and obesity, are waived.  [Dkt. 19 at 7.]  Heather does not contest this waiver argument in her reply, and she clarifies that she only referenced the record describing tendinitis and carpal tunnel syndrome to challenge the ALJ's credibility assessment.  [Dkt. 21 at 7.]  Given these circumstances, the Court will consider only whether the ALJ erred in his subjective symptom analysis of Heather's anxiety and mood disorders.

and that Heather has not identified an entire line of evidence supporting her disability claim that the ALJ ignored.  [*Id.*]

In reply, Heather reiterates that the ALJ improperly considered daily activities, such as walking and playing with her dogs, and relies on a decision by the Seventh Circuit Court of Appeals to support her position.  [Dkt. 21 at 5-6 (citing *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014).]

SSR 16-3p instructs the ALJ to apply a two-step test to weigh the claimant's subjective symptoms.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain."  SSR 16-3p, at *2; *see also* 20 CFR § 416.929.  Second, if such an impairment is found, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*  If there is a conflict between the plaintiff's description and the objective medical evidence presented, the ALJ must consider "other relevant evidence in the individual's case record" to resolve the conflict.  SSR 16-3p, at *4; *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

An ALJ's subjective symptom evaluation is a credibility determination entitled to special deference and will be reversed only if patently wrong.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).  "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations."  *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)).

Given the substantial deference afforded to an ALJ's credibility determinations, the Court finds that the ALJ's subjective symptom analysis in this case is not "patently wrong" and does not

provide a basis for reversal.  As discussed above, *see* Part IIIA *supra*, the ALJ fairly reviewed the medical record, including evidence in the medical record that supported Heather's testimony, and he did not ignore an entire line of evidence or improperly cherry pick notes from the medical record.  Instead, the ALJ reasonably found that Heather's description of the frequency and severity of her condition was inconsistent with the fact that she was able to look after herself for prolonged periods without assistance—while her son is her caretaker, he has never had to miss work to look after her—and that her treatment has remained stable and conservative with occasional psychotherapy appointments and effective medication prescribed by her primary care physician. [Dkt. 14-2 at 25]; *see also Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005) (holding that the ALJ reasonably found that the claimant's complaint of extreme pain was inconsistent with her "routine and conservative" treatment).  He noted that while she claimed to have difficulty interacting with people, her medical records showed that she was "generally able to engage with her providers and others."  [Dkt. 14-2 at 25.]

Although the ALJ considered Heather's daily activities, some of which she testified to engaging in regularly and others which were recommended to her by a trained psychotherapist, he did not go so far as to equate those daily activities with the ability to perform full-time work. Instead, he expressly noted that "[w]hile no one factor cited above is dispositive, and each perhaps on its own does not establish anything conclusively, the totality of the facts and circumstances cited above made it difficult to rely heavily on the claimant's subjective complaints."  [*Id.*]  For this reason, the ALJ "greatly relied upon" the objective medical evidence and the expert medical opinions from Dr. Lovko and Dr. Shipley indicating that Heather was capable of light work with some moderate limitations.  [*Id.*]

Unlike the claimant in *Scrogham*, which is the case that Heather relies on in her reply brief, Heather's medical records indicate that she had a stable condition that was effectively managed with conservative treatments and that her condition did not grow progressively worse over time despite increasingly invasive treatments. The ALJ did not overstate the significance of Heather's daily activities; he merely noted that these activities were inconsistent with her description of the severity of her condition and took that inconsistency into consideration in evaluating her credibility along with a number of other factors. The ALJ did not simply cherry pick evidence that supported his conclusion while ignoring evidence that did not; instead, he acknowledged evidence that supported Heather's characterization of the severity of her condition, such as her reports of extreme distress over her daughter's use of drugs while pregnant, [dkt. 14-2 at 23], but ultimately concluded that her treatment overall was stable and conservative and that the severity of her mental illness was less severe than she claimed, [*id.* at 24-25.]

The Court disagrees with Heather's contention that the ALJ's opinion exhibits "deep logical flaws," and that the "accumulation of instances of the ALJ getting it wrong" shows that his subjective symptom analysis was patently wrong. [*See* dkt. 21 at 7-8.] Reviewing courts take a deferential approach to the ALJ's credibility determinations, and the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability" to withstand review. *Scivally v. Sullivan*, 996 F.2d 1070, 1076 (7th Cir. 1992). The ALJ's reasoning does not need to be "flawless," *Similia v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009), and will be sustained on review despite isolated errors, *see Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are."); *Walcott v. Berryhill*, 2019 WL 2494165, at *8 (S.D. Ind. Feb. 5, 2019) ("Even if this court were to hold that the ALJ should have expressly addressed

16

Plaintiff's activities, any error was harmless because the ALJ provided other reasons for discounting Plaintiff's subjective complaints.").

For these reasons, the Court concludes that the ALJ's subjective symptom analysis withstands this Court's deferential review, and Heather's request for relief on this issue is denied.

### D.  Step 5 Analysis

Heather argues that the VE's testimony that Heather could perform work as a cafeteria attendant conflicts with the Department of Labor's publication *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("*SCO*").  [Dkt. 18 at 21.] Specifically, she contends that the VE incorrectly testified that she could work as a cafeteria attendant despite her limitation of having no "public interaction as part of [her] job duties."  [Dkt. 14-2 at 21.]  This is because the *SCO* describes the duties of a cafeteria attendant as including "[s]erving: Attending to the needs or requests of people . . . or the expressed or implicit wishes of people.  Immediate response is involved."  [*Id.*]  Heather argues that "[d]espite being alerted to the potential problem during the hearing, the ALJ did not consult the *SCO* to determine if the representative occupation provided by the VE . . . was consistent with his hypothetical," as required by SSR 00-4p.  [*Id.*]

In response, the Commissioner argues that Heather forfeited this issue by failing "to call the [VE's] testimony into question" during the hearing.  [Dkt. 19 at 20.]  In reply, Heather argues that she adequately "question[ed] the VE about the potential conflict identified in [her] brief." [Dkt. 21 at 8.]

The Seventh Circuit Court of Appeals has explained that "[w]hen no one questions the [VE's] foundation or reasoning, an ALJ is entitled to accept the [VE's] conclusion." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).  Thus, when a claimant does not object to a VE's

testimony during the disability hearing before the ALJ, she forfeits any objections she might have raised for judicial review.  *See Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016); *Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023) (finding that "[a] claimant who fails to object at the hearing forfeits any challenge to the VE's testimony. This objection must be specific; to avoid forfeiture, a claimant must do more than make a general objection or vaguely ask the VE about his methodology"); *Leisgang v. Kijakazi*, 72 F. 4th 216, 220 (7th Cir. 2023) (reiterating that a claimant "may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the closure of the administrative record" and that when the claimant fails to raise a timely objection, the issue is forfeited unless the VE's testimony is "facially implausible or incoherent").

Here, Heather's attorney did not object to the VE's testimony during the hearing or raise specific challenges to his testimony on cross examination.  Instead, she merely asked the following question:

    Q  Mr. Coleman, the cafeteria attendant job that you identified in hypothetical one and then retained in hypothetical two, does that include the limitation of no interacting with the general public?

    A  There's no interaction in the DOT under the cafeteria attendant.  You're performing the essential functions among the public, but there's no interaction requirements in the essential functions.

[Dkt. 14-2 at 58.]  Thus, Heather's attorney merely asked the VE to clarify and explain his testimony.  She did not challenge the veracity of the VE's testimony and thus did not affirmatively preserve the issue for judicial review.

18

What's more, Heather has not shown that the VE's unopposed testimony was facially implausible or incoherent, such that the ALJ had an obligation to address the conflict despite the absence of a contemporaneous objection.  She relies on an unpublished order from the Seventh Circuit Court of Appeals, *Collins v. Berryhill*, 743 F. App'x 21 (7th Cir. 2018), but that case is distinguishable.  In *Collins*, the VE testified that the claimant "could find sedentary work as a food preparer, lobby attendant, assembler, or office helper," but that testimony was clearly and unambiguously in conflict with the *Dictionary of Occupational Titles* ("*DOT*"), which classifies food preparer and office helper as "light work."  *Id.* at 25.  Although the claimant did not object to the VE's testimony at the disability hearing, the court did not apply forfeiture and decided the issue on the merits because the conflict between the VE's testimony and the *DOT* "would have been obvious had the ALJ checked the DOT."  *Id.*

In this case, however, the ALJ could not have identified the alleged conflict so easily. The VE testified that the job of cafeteria attendant did not require interaction with the public. Heather agrees that this testimony is consistent with the *DOT* but argues that a line from the *DOT*'s companion publication, the *SCO*, complicates matters by noting that a cafeteria attendant's duties include "[s]erving: Attending to the needs or requests of people . . . or the expressed or implicit wishes of people.  Immediate response is involved."  [Dkt. 14-2 at 21; dkt. 18 at 21-22.]  There is no ambiguity in whether a job is classified as "sedentary work" or "light work"; it is listed as one or the other.  But here, it is not obvious that the *SCO*'s description of "serving" is incompatible with Heather's limitation of having no interaction with the public. The ALJ would have had to do more than simply check the *SCO*—he would have had to go further and analyze whether the *SCO*'s description of "serving" amounted to "public interaction" as that term was used in Heather's RFC.

For this reason, the Court finds that the VE's testimony was not "facially implausible," and that Heather forfeited the issue for judicial review by failing to raise a timely objection.

*Collins* presents another problem for Heather because in that case the Seventh Circuit Court of Appeals ultimately held that the ALJ's error was harmless: "[T]his oversight is not fatal because the DOT lists assembler positions that are sedentary, and the VE estimated that 55,000 of these jobs allow changing position at will. That is a significant number of jobs in the national economy, so any error would be harmless." *Collins* 743 F. App'x at 25 (internal record citations omitted). Here, in addition to cafeteria attendant, the ALJ found that Heather was also capable of working as a mailroom clerk or an office helper, and the VE estimated there were a combined 108,020 of these jobs in the national economy. [Dkt. 14-2 at 27.] Heather does not challenge the VE's testimony with respect to these numbers. Thus, at most, *Collins* supports a finding of harmless error.

As discussed above, the Court concludes that Heather has forfeited this issue for judicial review by failing to object to the VE's testimony during the disability hearing. Moreover, any error the ALJ made in reliance on the VE's allegedly inaccurate testimony would be harmless and would not provide a basis for reversal. For these reasons, Heather's request for relief on this issue is denied.

## IV. CONCLUSION

The standard for disability claims under the Social Security Act is stringent. *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for

by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Heather to reverse the ALJ's decision that she was not disabled during the relevant period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

       So **ORDERED**.

    Date: 2/20/2024

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

Lori M. Craig
KELLER & KELLER
lcraig@2keller.com

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Dustin Allen Schock
Keller & Keller
dschock@2keller.com

Catherine Seagle
Social Security Administration
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov